VALTON SHELTON, Plaintiff-in-Error, v. ROBERT BREEDING, Defendant-in-Error.—310 S. W. (2d) 469.

Eastern Section. October 22, 1957.

Petition for Certiorari Denied by Supreme Court March 4, 1958.

Massey, Stone & Kirkland, Chattanooga, for plaintiff in error.

Moon, Anderson, Harris & Dineen, Chattanooga, for defendant in error.

HALE, J.   This case turns upon the proper construction and application of T. C. A. sec. 28-112, to wit:

"If at any time any cause of action shall accrue against any person who shall be out of this state, the action may be commenced within the time limited therefor, after such person shall have come into the state; and, after any cause of action shall have accrued, if the person against whom it has accrued shall be absent from or reside out of the state, the time of his absence or residence out of the state shall not be taken as any part of the time limited for the commencement of the action."

If the exception noted does not apply, then the statute of limitations of one year is applicable.   T. C. A. sec. 28-304.

On November 19, 1952, plaintiff-in-error Shelton was injured in an automobile accident involving an automobile driven by defendant-in-error Breeding, in which he was a passenger, and one owned by Wrinkle and driven by his servant Burns.   This accident occurred in Chattanooga and all parties were residents of Tennessee.

On February 3, 1953, Shelton sued Breeding, Wrinkle, and Burns.  Process was had on Wrinkle and Burns but

not executed as to Breeding. Subsequent efforts by alias process to reach Breeding were ineffectual.

On April 26, 1954, a voluntary nonsuit was entered against Wrinkle and Burns, apparently under a covenant not to sue.

On February 24, 1956, the present suit was instituted against Breeding, the plaintiff averring:

"Plaintiff avers that since November 19, 1952, that defendant Robert Breeding has resided outside of the State of Tennessee and has thus been immune to the process of this Honorable Court. Plaintiff says that this defendant returned to the State of Tennessee, Hamilton County, on the 24th day of February, 1956, and that thereupon, plaintiff learned of his being within the jurisdiction of the court for the first time since this accident and plaintiff caused a new suit to be filed and new process to be issued and service was at last perfected upon the defendant, Robert Breeding."

This was met by a plea in abatement asserting:

"That he is a resident of Putnam County, Tennessee, and has been all his life; that some time prior to November 19, 1952 and ever since he has maintained his residence at 712 Dixie Avenue in Cookeville, Putnam County, Tennessee, and been subject to service of process at that address, and plaintiff's cause of action, if any, is, therefore, barred by the Statute, of Limitations."

Evidence was heard on this plea, which was sustained, resulting in this appeal.

There is no substantial dispute about the facts or the conclusions to be drawn therefrom. Breeding, a married man, was a resident of Cookeville, Tennessee, and voted there. He was the operator of a power equipment for Foster & Creighton Company, of Nashville, general contractors, which does construction work in Tennessee and other states. Breeding, accompanied by his wife, in a trailer, would go from job to job in various states as his employment required. Sometimes they lived in an apartment rather than a trailer. According to his employment record, he was in Tennessee during the following periods: from November 19, 1952, through January 17, 1953, in Chattanooga; from February, 1953, through March, 1953, Nashville; from October 30, 1954, through May 7, 1955, Knoxville. The remainder of the period in question, i.e., from the date of the accident up until the filing of the suit, February 24, 1956, was spent by him on jobs in other states. On some of these occasions he would visit his parents at Cookeville on week-ends and holidays, the number of which is not shown. He owned no real estate in Tennessee and, so far as is shown by the record, did not own any property subject to attachment.

From the time of the accident until the institution of this suit he was not in the state a full year if we tack all the times he was in the state together. As previously indicated, there were times when he might have been caught in Tennessee had the plaintiff known where to locate him.

Code Section T. C. A. sec. 28-112, supra, originated in Chapter 10, Acts of 1865, which in Carlin v. Wallace, 81 Tenn. 571, was held to be "broad and comprehensive and embraces those persons who are temporarily absent, as well as those who are nonresidents * * *."

In the later case of Kempe v. Bader, 86 Tenn. 189, 6 S. W. 126, 127, Carlin v. Wallace was cited and approved, and it was said that a temporary absence with intent to return is "an absence from the state, within the meaning" of the code section mentioned.

And then it was said, 86 Tenn. at page 197, 6 S. W. at page 129:

> "The time during which defendant was absent from the state after the statute of this state had begun running in his favor, being deducted, the statute has not completed the bar, and the plea of the Tennessee statute is therefore unsustained."

This case was cited in an annotation to 148 A. L. R. at page 746, and seems to us to clearly answer the question presented by this record.

We do not find anything in Spiegel, Inc., v. Luster, 31 Tenn. App. 342, 215 S. W. (2d) 16, 17, contrary to this holding. In the first place, Speigel does not discuss the cases of Carlin v. Wallace and Kempe v. Bader, supra, but specifically found the defendant "did not change his residence * * * and could have been sued and personally served with process here each fortnight between April, 1942, and August, 1945". In the case at bar the defendant was out of the state the greater part of the time, and only on rare occasions at what he called home in Cookeville. It is true he said that he might have been served with process at Cookeville. Of course that would depend on his being caught there on some of his visits, and that would depend upon the alertness and luck of the plaintiff.

In 34 Am. Jur. "Limitations of Actions", paragraph 218, page 175, it is said:

"The object of such an exception is to give a claimant the full benefit of the time allowed him in which to bring his action. Therefore, a creditor's rights cannot be abridged or destroyed by the simple announcement by an absent debtor, conscientious or otherwise, that it was always his intention to maintain a residence in a certain place. The intention must be gathered from actions and circumstances, rather than by an announcement which is inconsistent with a conclusion based upon a reasonable interpretation of the facts."

We think the purpose of the quoted statute was to give the plaintiff a full year in which he might sue the defendant; that this contemplated the defendant being within the state and available for the service of process.

As the law then existed, the only remedy that Shelton had was by personal service of process on defendant. The parties were residents of Tennessee, as previously pointed out. The fact that Breeding temporarily removed himself from the state would not allow substituted service of process under T. C. A. sec. 20-224. It was not until February 28, 1957, that this section was amended by Chapter 61, Acts of 1957, to apply to a resident who had been "absent from the state of Tennessee for at least thirty days", etc.

We think the plea in abatement was improperly sustained, and the case must be reversed and remanded. Cost on appeal against defendant in error.

McAmis, P. J., and Howard, J., concur.